Sheehan & Associates, P.C.
Spencer Sheehan
505 Northern Blvd., Suite 311
Great Neck, NY 11021
(516) 303-0552
spencer@spencersheehan.com

United States District Court
Southern District of New York                          7:19-cv-04908

| | |
|---|---|
| Francis McVetty, Jane Doe, individually and on behalf of all others similarly situated | |
| Plaintiffs | |
| - against - | Complaint |
| TomTom North America, Inc. | |
| Defendant | |

Plaintiffs by attorneys alleges upon information and belief, except for allegations pertaining to plaintiff, which are based on personal knowledge:

1.    TomTom North America, Inc. ("defendant") manufactures, distributes, markets, labels and sells  portable navigation devices to consumers for use in automobiles, all-terrain vehicles (ATVs) and personal movement from third-party retailers, including brick-and-mortar stores and online, and directly from defendant's website (the "Products").

2.    The Product models include: GO, ONE, XL, VIA, START, XXL and EASE.

3.    The Products have a basic feature set of a color screen within a black frame that attaches to a flat surface to facilitate use, primarily while driving.

4.    The models are distinguished by additional features such as:

- Active magnetic mount
- Advanced Lane Guidance
- Compatible with Siri and Google Now™
- Lifetime TomTom Traffic via Smartphone
- MyDrive Cloud App
- Smartphone Messages

- Hands-free calling
- Lifetime Maps (World)
- Updates via Wi-Fi

    5.    The image below is a standard TomTom device, the XL Classic.



    6.    All of the Products are marketed and advertised as coming with Lifetime Maps or Lifetime Maps and Traffic, point-of-sale marketing, retailers' catalogues, websites and television sales, uniformly and pervasively promotes the Lifetime Maps and/or Traffic Updates.

 

    7.    The product boxes – the last thing the consumers see before they purchase the Products – have continuously highlighted the addition of Lifetime Traffic and/or Maps through statements such as:

- LIFETIME TRAFFIC & MAPS EDITION

2

- LIFETIME MAPS OF US CAN & MEX

- LIFETIME MAPS

 



8.     In today's digital world, consumers feel overwhelmed by the rapid pace at which new electronic devices are released.

9.     From the latest smartphone, to notebook computers to digital cameras, consumers have long asked, "Why do I need to get a new [device] when the one I have still works?"

10.    Moreover, given that the prices of these items have increased at levels above the consumer price index and stalled wage growth, there is a clear incentive to pay a bit a premium price for a device, but with the comfort of knowing your next device is a long way off.

11.    Defendant capitalizes on this consumer sentiment by essentially saying, "Buy our

devices now (at their high price), and you won't have to get another one for a long time because we will provide updated maps so that the functionality does not decrease."

12.     The represented Lifetime Map and Traffic Updates are an inducement to consumers who would not have paid as much for the navigation devices in the first instance, given they might otherwise expect to require a replacement product after a few years.

13.     Despite the representations of Lifetime Maps & Traffic, consumers are misled that the "lifetime" referred to in the marketing of the devices is false, deceptive and misleading.

14.     In its January 2018 announcement terminating lifetime map updates, defendant explained this was caused by technological limitations.[1]:

Every day, at TomTom, we work very hard to bring you the best navigation experience ever. A big part of this work is to continuously improve the qua the maps, services, and software that your navigation device runs on.

It has become clear that some of our older generation navigation devices do not have sufficient resources to run the newest maps and software availa

**HOW IT WILL AFFECT YOUR DEVICE (DEVICES WITH LIFETIME MAPS ARE NOT AFFECTED)**

For affected devices (see the full list of affected devices),

- You will not be able to renew maps or services.
- If you have an active subscription to map updates or TomTom Services, you will continue receiving those until the subscription runs out.
- You will not receive new software updates.
- Your device will continue to function as it does now, but your map will become out-of-date and as such navigation will be less accurate.

**REPLACEMENT OFFER**

This may be the perfect opportunity to discover what our new range of navigation products has to offer you.

Every day, at TomTom, we work very hard to bring you the best navigation experience ever. A big part of this work is to continuously improve the quality of the maps, services, and software that your navigation device runs on.

It has become clear that some of our older generation navigation devices do not have sufficient resources to run the newest maps and software available.

**HOW IT WILL AFFECT YOUR DEVICE (DEVICES WITH LIFETIME MAPS ARE NOT AFFECTED)**

For affected devices (see the full list of affected devices),

---

[1] https://www.tomtom.com/en_us/obsolete-products/#car

•     You will not be able to renew maps or services.

•     If you have an active subscription to map updates or TomTom Services, you will continue receiving
those until the subscription runs out.

•     You will not receive new software updates.

•     Your device will continue to function as it does now, but your map will become out-of-date and as such navigation will be less accurate.

      15.    The actual warranty terms for the lifetime map traffic updates are found on defendant's website[2]:

## WHAT ARE LIFETIME MAPS?



When you purchase a navigation device or smartphone app which includes Lifetime Maps, you can download 4 or more full updates of your map every year for the lifetime of your product. Lifetime Maps are available without additional charge and for as long as the product is supported.

The map updates are the full updates for the map that is preinstalled on your device or that is installed on your smartphone app. The geographical coverage and feature support in the map will continue to match the original version, as long as the original is commercially available. You will receive all available updates to the road network, addresses and Points of Interest in these releases.

To benefit from Lifetime Maps, please register your device. For apps including Lifetime Maps no registration is required.

### WHAT DOES "LIFETIME" MEAN?

Lifetime is the useful life of the device, which means the period of time that TomTom continues to support your device with software updates, services, content or accessories. A device will have reached the end of its life when none of these are available any more. The useful life of the smartphone app means the period of time that TomTom continues to support the app with updates.

Lifetime Services can only be used on the device or app they have been purchased with and cannot be transferred to another TomTom device or app.

## WHAT ARE LIFETIME MAPS?

When you purchase a navigation device or smartphone app which includes Lifetime Maps, you can download 4 or more full updates of your map every year for the lifetime of your product. Lifetime Maps are available without additional charge and for as long as the product is supported.

The map updates are the full updates for the map that is preinstalled on your device or that is installed on your smartphone app. The geographical coverage and feature support in the map will continue to match the original version, as long as the original is commercially available. You will receive all available updates to the road network, addresses and Points of Interest in these releases.

To benefit from Lifetime Maps, please register your device. For apps including Lifetime Maps no registration is required.

---

[2] https://www.tomtom.com/en_us/obsolete-products/#car

16.    The affected devices were identified as[3]:

| | | |
|---|---|---|
| GO 750 (W7) | XL325 | XXL530(RY)/535(RW)/540(RX)/550(GL) |
| ONE 125/130 | START (XB/XD/XF/XH) | EASE (XI/XJ/XK/XL) |
| XL 335 | GO 1000 (TD/TB) | GO 1005 (SF/SB) |
| VIA 110(AG)/130(AV) | VIA 120 (AN/AU/FM) | XXL CLASSIC SERIES (GQ) |
| GO 700 (M5) | GO 630 (JB) | GO 720 (M6) |
| GO 730 (J4) | GO 740 (WR/WL) | GO 750 (W4) |
| START 45(GT)/55(GU) | ONE IQ ROUTES (P1/PS/P2/PU) | ONE 140 (RED) (PM) |
| XL 340 | GO 820 (FT) | GO 825 (FY) |
| START 20(AO)/25(BK) | | |

17.    At no point prior to the time of sale did defendant, acting through its privies, make the terms of the lifetime maps and traffic updates available to consumers.

18.    The warranties that the Products would receive lifetime map and traffic updates were unambiguous and did not disclaim the provision of this feature in any conspicuous or prominent fashion.

19.    Defendant's provision of lifetime maps and traffic updates permitted defendant to arbitrarily and in a self-serving fashion establish the lifetime of the device:

**WHAT DOES "LIFETIME" MEAN?**

Lifetime is the useful life of the device, which means the period of time that TomTom continues to support your device with software updates, services, content or accessories. A device will have reached the end of its life when none of these are available any more. The useful life of the smartphone app means the period of time that TomTom continues to support the app with updates.

20.    The termination of the lifetime maps was claimed as necessary because:

---

[3] https://www.tomtom.com/en_us/obsolete-products/#car

It has become clear that some of our older generation navigation devices do not
have sufficient resources to run the newest maps and software available.

21.     Defendant's explanation is contrary to the capabilities of the devices and to basic fair

dealing.

22.     First, whether or not the Products have sufficient resources to continue with updates

is entirely dependent upon the *prior* updates distributed by defendant to consumers.

23.     Second, many, most or all of the affected devices have the capability to accept an SD

card, which can apply updated map and traffic data to the devices, without utilizing any memory

of the devices themselves. load map and traffic updates to an SD card.

24.     Third, defendant's probable explanation for "sunsetting" the relevant devices is to

promote the sale of new devices under the guise of a "Replacement Offer":

**REPLACEMENT OFFER**

This may be the perfect opportunity to discover what our new range of navigation
products has to offer you.

25.     By diminishing and/or eliminating the utility of affected devices, defendant has been

able to reverse and/or stem its decline in direct to consumer sales.[4]

26.     Further, defendant's reliance on its sole discretion as to when it decides to cease

providing updates disregards that consumers were buying hardware (the physical devices) and

software (lifetime maps), such that its revocation of part of the transaction constitutes a taking

under false pretenses and unconscionable commercial conduct.

27.     Instead of defendant offering refunds to consumers in the amount of the present-

value of the lifetime maps services, they were offered "rebates" on new devices.

---

[4] TomTom ditches map updates for some sat-navs, https://www.bbc.com/news/42859546, Jan. 9, 2018 (according to
analyst Chris Jones at Canalys, "TomTom's sales of devices direct to customers have recently been in "severe
decline".)

28.     Defendant's claims of lifetime maps and traffic updates is rendered illusory given the undisclosed caveats that the "lifetime" referred to as *not* merely the lifetime of the device, but the amount of time defendant chooses to *support* the device.

29.     All of the limitations described herein were not communicated to consumers prior to, or at, the point of sale.

30.     No reasonable consumers understand or interpret "lifetime" to mean sooner than the actual lifetime of the device as measured by its ability to function with reasonable memory capacity, especially when the devices accept memory cards with the updates on them.

31.     When consumers have experienced standard and non-exceptional glitches with their devices, defendant's customer support does not adequately engage in good-faith repair efforts, but is instead incentivized to sell new devices and/or map and traffic subscriptions.

32.     Defendant unfairly charges consumers who attempt warranty claims to determine whether or not a warranted loss or condition has occurred.

33.     The Products were also detrimentally affected by the transition of the Coordinated Universal Time (UTC) clock used by the satellite navigation system which reached the limit for its 10-bit "week number" (WN) counter and  reverted to 0000000000.[5]

34.     While defendant offered "updates" to its stable of devices, they were contingent on installing updates to the devices.

---

[5]https://arstechnica.com/information-technology/2019/04/gps-rollover-event-on-april-6-could-have-some-side-effects/



35.    Defendant's actions constitute unconscionable commercial practices, deception, fraud, false pretenses, misrepresentation, and/or the knowing concealment, suppression, or omission of materials facts with the intent that others rely on such concealment, suppression, or omission in connection with the sale and use of Defendant's Products.

36.    The Products contain other representations which are misleading and deceptive.

37.    As a result of the false and misleading labeling, the Products are sold at premium prices – no less than $149.99 and upwards of $589.99, excluding tax – compared to other similar products represented in a non-misleading way.

<u>Jurisdiction and Venue</u>

38.    Jurisdiction is proper pursuant to 28 U.S.C. § 1332(d)(2).

39.    Upon information and belief, the aggregate amount in controversy is more than $5,000,000.00, exclusive of interests and costs.

40.    This court has personal jurisdiction over defendant because it conducts and transacts business, contracts to supply and supplies goods within New York.

41.    Venue is proper because plaintiff and many class members reside in this District and defendant does business in this District and State.

42.    A substantial part of events and omissions giving rise to the claims occurred in this

District.

Parties

43.    Plaintiff is a citizen of Westchester County, New York.

44.    John and Jane Doe plaintiffs are citizens of the other 49 states who have been affected by the conduct alleged here but their true identities are not fully known.

45.    John and Jane Doe may be used in the complaint to refer to representatives of sub-classes of the various states and at such time their identities will be disclosed.

46.    The allegations as related to laws of other states where no named plaintiff has been disclosed serves as a placeholder upon joinder or amendment.

47.    Plaintiffs purchased the Products based upon the representations on the packaging.

48.    Plaintiff's Products remain functional yet are denied traffic and map updates, due to defendant's failures to promptly perform standard troubleshooting and repairs, caused by inherent defective qualities of the Products.

49.    Defendant is a California corporation with a principal place of business in Lebanon, New Hampshire.

50.    During the class period, plaintiffs purchased one or more Products for personal use, consumption or application with the representations described herein, for no less than the price indicated, *supra*, excluding tax, within their districts and/or states.

51.    Plaintiff paid this premium because prior to purchase, plaintiff saw and relied on the misleading representations.

52.    Plaintiff would consider purchasing the Products again if there were assurances that the Products' representations were no longer misleading.

Class Allegations

53.     The classes will consist of all consumers in the following states:  all, New York, Idaho, Ohio, Massachusetts, Kentucky, California, who purchased any Products containing the actionable representations during the statutes of limitation.

54.     A class action is superior to other methods for fair and efficient adjudication.

55.     The class is so numerous that joinder of all members, even if permitted, is impracticable, as there are likely hundreds of thousands of members.

56.     Common questions of law or fact predominate and include whether the representations were likely to deceive reasonable consumers and if plaintiff(s) and class members are entitled to damages.

57.     Plaintiff's claims and the basis for relief are typical to other members because all were subjected to the same representations.

58.     Plaintiff(s) is/are an adequate representative because his/her/their interests do not conflict with other members.

59.     No individual inquiry is necessary since the focus is only on defendant's practices and the class is definable and ascertainable.

60.     Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest.

61.     Plaintiff(s) counsel is competent and experienced in complex class action litigation and intends to adequately and fairly protect class members' interests.

62.     Plaintiff(s) seeks class-wide injunctive relief because the practices continue.

<u>New York General Business Law ("GBL") §§ 349 & 350, California Consumers
Legal Remedies Act, Civ. Code §§ 1750-1785 ("CLRA")
and Consumer Protection Statutes of Other States and Territories</u>

63.     Plaintiffs and John and Jane Doe plaintiffs, representing the 49 other states where they reside and purchased the Products, incorporate by reference all preceding paragraphs and

assert causes of action under the consumer protection statutes of all 50 states.

a.  Alabama Deceptive Trade Practices Act, Ala. Code § 8-19-1, *et. seq.*;

b.  Alaska Unfair Trade Practices and Consumer Protection Act, Ak. Code § 45.50.471, *et. seq.*;

c.  Arkansas Deceptive Trade Practices Act, Ark. Code § 4-88-101, *et. seq.*;

d.  California Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750 *et seq.* and Unfair Competition Law, Cal. Bus. Prof. Code §§ 17200- 17210 *et. seq.*;

e.  Colorado Consumer Protection Act, Colo Rev. Stat § 6-1-101, *et. seq.*;

f.  Connecticut Unfair Trade Practices Act, Conn. Gen Stat § 42-110a, *et. seq.*;

g.  Delaware Deceptive Trade Practices Act, 6 Del. Code § 2511, *et. seq.*;

h.  District of Columbia Consumer Protection Procedures Act, D.C. Code §§ 28-3901, *et. seq.*;

i.  Florida Deceptive and Unfair Trade Practices, Act *Florida Statutes* § 501.201, *et. seq.*;

j.  Georgia Fair Business Practices Act, §10-1-390 *et. seq.*;

k.  Hawaii Unfair and Deceptive Practices Act, Hawaii Revised Statutes § 480 1, *et. seq.* and Hawaii Uniform Deceptive Trade Practices Act, Hawaii Revised Statute § 481A-1, *et. seq.*;

l.  Idaho Consumer Protection Act, Idaho Code § 48-601, *et. seq.*;

m.  Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS § 505/1, *et. seq.*;

n.  Kansas Consumer Protection Act, Kan. Stat. Ann §§ 50 626, *et. seq.*;

o.  Kentucky Consumer Protection Act, Ky. Rev. Stat. Ann. §§ 367.110, *et. seq.*, and the Kentucky Unfair Trade Practices Act, Ky. Rev. Stat. Ann § 365.020, *et. seq.*;

p.  Louisiana Unfair Trade Practices and Consumer Protection Law, La. Rev. Stat. Ann. §§ 51:1401, *et. seq.*;

q.  Maine Unfair Trade Practices Act, 5 Me. Rev. Stat. § 205A, *et. seq.*, and Maine Uniform

Deceptive Trade Practices Act, Me. Rev. Stat. Ann. 10, § 1211, *et. seq.*;

r.  Massachusetts Unfair and Deceptive Practices Act, Mass. Gen Laws ch. 93A;

s.  Michigan Consumer Protection Act, §§ 445.901, *et. seq.*;

t.  Minnesota Prevention of Consumer Fraud Act, Minn. Stat §§ 325F.68, *et. seq.*; and Minnesota Uniform Deceptive Trade Practices Act, Minn Stat. § 325D.43, *et. seq.*;

u.  Mississippi Consumer Protection Act, Miss. Code An. §§ 75-24-1, *et. seq.*;

v.  Missouri Merchandising Practices Act, Mo. Rev. Stat. § 407.010, *et. seq.*;

w.  Montana Unfair Trade Practices and Consumer Protection Act, Mont. Code § 30-14-101, *et. seq.*;

x.  Nebraska Consumer Protection Act, neb. Rev. Stat. § 59 1601 *et. seq.*, and the Nebraska Uniform Deceptive Trade Practices Act, Neb. Rev. Stat. § 87-301, *et. seq.*;

y.  Nevada Trade Regulation and Practices Act, Nev. Rev. Stat. §§ 598.0903, *et. seq.*;

z.  New Hampshire Consumer Protection Act, N.H. Rev. Stat. § 358-A:1, *et. seq.*;

aa. New Jersey Consumer Fraud Act, N.J. Stat. Ann. §§ 56:8 1, *et. seq.*;

bb. New Mexico Unfair Practices Act, N.M. Sta. Ann. §§ 57 12 1, *et. seq.*;

cc. New York General Business Law ("GBL") §§ 349 & 350;

dd. North Dakota Consumer Fraud Act, N.D. Cent. Code §§ 51 15 01, *et. seq.*;

ee. Ohio Rev. Code Ann. §§ 1345.02 and 1345.03; Ohio Admin. Code §§ 109;

ff. Oklahoma Consumer Protection Act, Okla. Stat. 15 § 751, *et. seq.*;

gg. Oregon Unfair Trade Practices Act, Ore. Rev. Stat. § 646.608(e) & (g);

hh. Rhode Island Unfair Trade Practices and Consumer Protection Act, R.I. Gen. Laws § 6-13.1-1 *et. seq.*;

ii. South Carolina Unfair Trade Practices Act, S.C. Code Law § 39-5-10, *et. seq.*;

jj. South Dakota's Deceptive Trade Practices and Consumer Protection Law, S.D. Codified Laws §§ 37 24 1, *et. seq.*;

kk. Tennessee Consumer Protection Act, Tenn. Code Ann. § 47-18-101 *et. seq.*;

ll. Vermont Consumer Fraud Act, Vt. Stat. Ann. Tit. 9, § 2451, *et. seq.*;

mm. Washington Consumer Fraud Act, Wash. Rev. Code § 19.86/0101, *et. seq.*;

nn. West Virginia Consumer Credit and Protection Act, West Virginia Code § 46A-6-101, *et. seq.*;

oo. Wisconsin Deceptive Trade Practices Act, Wis. Stat. §§ 100.18, *et. seq.*

64.    Named plaintiff asserts causes of action under New York General Business Law ("GBL") §§ 349 & 350.

65.    Jane Doe plaintiffs assert causes of action under the laws of the other 49 states, including the California Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750-1785 ("CLRA").

66.    Defendant's acts, practices, advertising, labeling, packaging, representations and omissions are not unique to the parties and have a broader impact on the public.

67.    Plaintiffs desired to purchase products which were as described by defendant and expected by reasonable consumers, given the product type and representations.

68.    Jane Doe California plaintiff and members of the California Subclass engaged in transactions as consumers who bought the Products for personal, family, or household consumption or use.  Cal. Civ. Code § 1761(d)-(e).

69.    In accordance with Civ. Code § 1780(a), Jane Doe California Plaintiff will seek injunctive and equitable relief for  violations of the CLRA and an injunction to enjoin the deceptive advertising and sales practices.

70.    After mailing appropriate notice and demand Jane Doe California Plaintiff will have

14

mailed and/or have amended the complaint to include a request for damages. Cal. Civil Code § 1782(a), (d).

71.    The conduct alleged in this Complaint constitutes unfair methods of competition and unfair and deceptive acts and practices for the purpose of the CLRA.

72.    Defendant violated the consumer protection laws of the states indicated.

73.    Pursuant to California Civil Code § 1780(a)(2) and (a)(5), Jane Doe California Plaintiff will seek an order that requires Defendant to remove and/or refrain from making representations on the Products' packaging misrepresents the Products' composition.

74.    Plaintiffs and prospective class members may be irreparably harmed and/or denied an effective and complete remedy if such an order is not granted.

75.    The representations and omissions were relied on by plaintiff and class members, who paid more than they would have, causing damages.

### Violations of California's False Advertising and Unfair Competition Law
(On Behalf of California Subclass)

76.    Jane Doe California Plaintiff realleges paragraphs above.

77.    Defendant falsely advertised the Products by representing they would receive "lifetime" updates, understood by plaintiff and the class to mean until their devices were no longer functional.

78.    Jane Doe California Plaintiff and other members of the California Subclass were injury in fact and lost money or property as a result of Defendant's violations of California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code § 17500 et seq.

79.    Jane Doe California Plaintiff seeks an order requiring Defendant to remove and/or refrain from making the representations on the Products' packaging.

### Violations of California's Unfair Competition Law
(On Behalf of the California Subclass)

80.    Jane Doe California Plaintiff realleges all paragraphs above.

81.    Defendant violated California's Unfair Competition Law ("UCL") and the Bus. & Prof. Code §§ 17200-17210, as to the Jane Doe Plaintiff California Subclass by engaging in unlawful, fraudulent, and unfair conduct as a result of its violations of (a) the CLRA, Cal. Civ. Code § 1770(a)(5), (a)(7), and (a)(9); (b) the FAL, Cal. Bus. & Prof. Code § 17500 et seq.; and (c) the Cal. Bus. & Prof. Code §§ 17580-17581.

82.    Defendant's acts and practices violate the UCL's proscription against fraudulent and unfair conduct.

83.    Defendant's misleading marketing, advertising, packaging, and labeling of the Products is likely to deceive reasonable consumers.

84.    Jane Doe California Plaintiff and other members of the California Subclass were deceived due to Defendant's marketing, advertising, packaging, and labeling of the Products, which misrepresent and/or omit the true facts.

85.    Jane Doe California Plaintiff and the other California Subclass members suffered substantial injury by buying Products they would not have purchased absent the unlawful, fraudulent, and unfair marketing, advertising, packaging, and labeling or by paying a premium price for the Products.

86.    There is no benefit to consumers or competition by deceptively marketing and labeling the Products.

87.    Pursuant to California Business and Professional Code § 17203, Jane Doe California Plaintiff and the California Subclass seek an order that Defendant:

(a) remove and/or refrain from making representations on the Products' packaging which are misleading;

(b)  provide restitution to Jane Doe California Plaintiff and the other California Class members;

(c)  disgorge all revenues obtained as a result of violations of the UCL; and

(d)  pay Jane Doe California Plaintiff and the California Subclass' attorney fees and costs.

<u>Negligent Misrepresentation</u>

88.    Plaintiff incorporates by references all preceding paragraphs.

89.    Defendant misrepresented the Products and took advantage of cognitive shortcuts made by consumers at the point-of-sale.

90.    Defendant had a duty to disclose and/or provide a non-deceptive, lawful description and emphasis of the Products' attributes and qualities.

91.    This duty is based on defendant's position as a trusted entity which has held itself out as having special knowledge in the production, service and/or sale of the product type.

92.    Plaintiff reasonably and justifiably relied on these negligent misrepresentations and omissions, which served to induce and did induce, the purchase of the Products.

93.    Plaintiff and class members would not have purchased the Products or paid as much if the true facts had been known, thereby suffering damages.

<u>Breach of Express Warranty and Implied Warranty of Merchantability</u>

94.    Plaintiff incorporates by references all preceding paragraphs.

95.    Defendant manufactures and sells products which misrepresent their qualities and attributes.

96.    Defendant warranted to plaintiff and class members that the Products would receive updates until the point at which the typical device failed to function based on its standard and customary usage which was not truthful and misleading.

97.    Plaintiff desired to purchase products which were as described by defendant.

17

98.   Defendant had a duty to disclose and/or provide a non-deceptive description of the Products and knew or should have known same were false or misleading.

99.   The Products did not conform to their affirmations of fact and promises, wholly due to defendant's actions.

100.   The Products were not merchantable in their final sale form.

101.   Plaintiff and class members relied on defendant's claims, paying more than they would have.

Fraud

102.   Plaintiff incorporates by references all preceding paragraphs.

103.   Defendant's actions were motivated by increasing their market share amongst toaster companies in the navigational devices market and to induce consumers to subscribe to additional services.

104.   Plaintiff and class members observed and relied on defendant's claims, causing them to pay more than they would have, entitling them to damages.

Unjust Enrichment

105.   Plaintiff incorporates by references all preceding paragraphs.

106.   Defendant obtained benefits and monies because the Products were not as represented and expected, to the detriment and impoverishment of plaintiff and class members, who seek restitution and disgorgement of inequitably obtained profits.

Jury Demand and Prayer for Relief

Plaintiff demands a jury trial on all issues.

   **WHEREFORE,** plaintiff prays for judgment:

1.   Declaring this a proper class action, certifying plaintiff(s) as representative and the

undersigned as counsel for the class;

2.  Entering preliminary and permanent injunctive relief by directing defendant to correct such practices to comply with the law;

3.  Injunctive relief for members of the New York Subclass pursuant to GBL §§ 349 and 350, without limitation;

4.  An award of restitution pursuant to California Business and Professions Code §§ 17203 and 17535 for Jane Doe California Plaintiff and members of the California Subclass;

5.  An award of disgorgement pursuant to California Business and Professions Code §§ 17203 and 17535 for Jane Doe California Plaintiff members of the California Subclass;

6.  An order enjoining Defendant, pursuant to California Business and Professions Code §§ 17203 and 17535, to remove and/or refrain from using representations on Defendant's Products described here;

7.  Awarding monetary damages and interest, including treble and punitive damages, pursuant to the common law, GBL, CLRA and other statutory claims;

8.  Awarding costs and expenses, including reasonable fees for plaintiff's attorneys and experts; and

9.  Such other and further relief as the Court deems just and proper.

Dated:   May 25, 2019

Respectfully submitted,

Sheehan & Associates, P.C.
/s/Spencer Sheehan
Spencer Sheehan (SS-8533)
505 Northern Blvd., Suite 311
Great Neck, NY 11021
(516) 303-0552
spencer@spencersheehan.com

7:19-cv-04908
United States District Court
Southern District of New York

Francis McVetty, Jane Doe individually and on behalf of all others similarly situated

Plaintiff

- against -

TomTom North America, Inc.

Defendant

# Complaint

Sheehan & Associates, P.C.
505 Northern Blvd., #311
Great Neck, NY 11021
Tel: (516) 303-0052
Fax: (516) 234-7800

Pursuant to 22 NYCRR 130-1.1, the undersigned, an attorney admitted to practice in the courts of New York State, certifies that, upon information, and belief, formed after an inquiry reasonable under the circumstances, the contentions contained in the annexed documents are not frivolous.

Dated:  May 25, 2019

/s/ Spencer Sheehan
Spencer Sheehan