UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

FRANCIS MCVETTY AND JANE DOE,
*individually and on behalf of all others similarly
situated*

                                  Plaintiffs,

              v.

TOMTOM NORTH AMERICA, INC.,
                                  Defendant.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: ___3/13/21_____

19 CV 4908 (NSR)
OPINION & ORDER

NELSON S. ROMÁN, United States District Judge:

Plaintiffs Francis McVetty and Jane Doe, individually and behalf of all others similarly situated (collectively, "Plaintiff" or "McVetty"), bring this putative class action against TomTom North America, Inc. ("TomTom") for (1) allegedly misleading or deceptive acts in violation of New York's General Business Law Sections 349 and 350, (2) negligent misrepresentation, (3) fraud, (4) breach of express warranty, and (5) unjust enrichment.[1] Before the Court is TomTom's motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)"). For the following reasons, the Court GRANTS Defendant's motion.

## BACKGROUND

The facts herein are drawn from Plaintiffs' Complaint ("Compl" (ECF No. 1)) and are presumed true for purposes of this motion.

### I.    Plaintiffs' Allegations

TomTom, a California corporation with a principal place of business in New Hampshire (Compl. ¶ 49), manufactures, distributes, markets, labels and sells portable navigation devices ("Products") to consumers through third-party retailers, including brick-and-mortar stores and

---

[1] Plaintiff has withdrawn the claims under the California consumer protection laws (Opp'n at 5 n.2) and for breach of implied warranty (Opp'n at 1 n.1).

online, and directly from defendant's website (*Id.* ¶ 1). "All of the Products are marketed and advertised as coming with Lifetime Maps or Lifetime Maps and Traffic, point-of-sale marketing, retailers' catalogues, websites and television sales, uniformly and pervasively promotes the Lifetime Maps and/or Traffic Updates." (*Id.* ¶ 6.) "The product boxes—the last thing the consumers see before they purchase the Products—have continuously highlighted the addition of Lifetime Traffic and/or Maps." (*Id.* ¶ 7.) Because of rapidly changing technology, consumers are willing to pay a premium for a device that comes with updates. (*Id.* ¶¶ 8-11.) Accordingly, TomTom's "represented Lifetime Map and Traffic Updates are an inducement to consumers who would not have paid as much for the navigation devices in the first instance, given they might otherwise expect to require a replacement product after a few years." (*Id.* ¶ 12.)

The warranty terms for Lifetime Maps on TomTom's website provide "When you purchase a navigation device or smartphone app which includes Lifetime Maps, you can download 4 or more full updates of your map every year for the lifetime of your product. Lifetime Maps are available without additional charge and for as long as the product is supported." (*Id.* ¶ 15.) McVetty alleges that these terms were not available to customers prior to the time of sale. (*Id.* ¶ 17.) McVetty further alleges that in the warranty terms, TomTom "self-serving[ly]" defined "lifetime" as "the useful life of the device" or "the period of time that TomTom continues to support [a] device with software updates, services, content or accessories." (*Id.* ¶ 19.)

In January 2018, TomTom announced that, due to technological limitations, certain devices—not including those with Lifetime Maps—will not be able to renew maps or services or receive software updates and, though the device will continue to function, the map will become out-of-date such that navigation will be less accurate, and, under a heading of "Replacement Offer"

consumers may consider purchasing a replacement device using a "rebate" (the "January 2018 Announcement"). (*Id.* ¶¶ 14, 27.)

McVetty alleges that an affected device's capacity to continue to receive updates is "entirely dependent upon the *prior* updates distributed by defendant to consumers" and that "most or all of the affected devices have the capability to accept an SD card, which can apply updated map and traffic data to the devices, without utilizing any memory of the devices themselves." (*Id.* ¶¶ 22-23.) He further alleges that "defendant's probable explanation for 'sunsetting' the relevant devices is to promote the sale of new devices under the guise of a 'Replacement Offer.'" (*Id.* ¶ 24.)

McVetty, a citizen of Westchester County, New York (*Id.* ¶ 43), alleges that he purchased one of TomTom's Products based upon the representations on the packaging using the word "Lifetime." (*Id.* ¶ 47.) He further alleges that he paid a premium for said Product "because prior to purchase, plaintiff saw and relied on the misleading representations" and he "would consider purchasing the Products again if there were assurances that the Products' representations were no longer misleading." (*Id.* ¶¶ 51-52.) McVetty admits that his Products "remain functional yet are denied traffic and map updates, due to defendant's failures to promptly perform standard troubleshooting and repairs, caused by inherent defective qualities of the Products." (*Id.* ¶ 48.)

The John and Jane Doe plaintiffs are citizens of 49 U.S. states other than New York who, like McVetty, purchased TomTom Products based on alleged misrepresentations on the packaging. (*Id.* ¶¶ 44, 47, 50.) The proposed classes are all consumers in New York, Idaho, Ohio, Massachusetts, Kentucky, California, who purchased any Products containing the actionable representations during the statutes of limitation. (*Id.* ¶ 53.)

In short, McVetty alleges that he and other class members purchased Products based on representations on the packaging indicating that the Products came with "Lifetime Maps" and that

TomTom created its own definition of "Lifetime" that was not disclosed on the packaging and appears only in a warranty on TomTom's website to which consumers did not have access prior to purchase and therefore the use of the term "Lifetime" on packaging upon which consumers relied was misleading, deceptive and/or fraudulent.

## II.    Procedural History

McVetty filed this action on May 25, 2019. (ECF No. 1.) The Court waived the pre-motion conference requirement and granted TomTom leave to file its motion to dismiss. (ECF No. 13.) That motion is now before the Court. (ECF No. 15.)

## LEGAL STANDARD

Under Rule12(b)(6), a court must determine whether the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Court must take all material factual allegations as true and draw reasonable inferences in the non-moving party's favor, but the Court is "not bound to accept as true a legal conclusion couched as a factual allegation," or to credit "mere conclusory statements" or "[t]hreadbare recitals of the elements of a cause of action." *Id.* (quoting *Twombly*, 550 U.S. at 555). A claim is facially plausible when the factual content pleaded allows a court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678.

Generally, "[i]n adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (internal quotation marks and citation omitted).

4

DISCUSSION[2]

## I.     New York Statutory Claims

To state a plausible clam under Sections 349 and 350 of New York's General Business Law, the plaintiff must make a prima facie showing that: (1) the defendant is engaged in "consumer-oriented" activity with "a broader impact on consumers at large," (2) "the defendant is engaging in an act or practice that is deceptive or misleading in a material way," and (3) "plaintiff has been injured by reason thereof." *Oswego Laborers' Loc. 214 Pension Fund v. Marine Midland Bank, N.A.*, 85 N.Y.2d 20, 25 (1995). New York defines "deceptive acts and practices" objectively, that is, they are "limited to those likely to mislead a reasonable consumer acting reasonably under the circumstances."[3] *Id.* at 26. "It is well settled that a court may determine as a matter of law that an allegedly deceptive advertisement would not have misled a reasonable consumer." *Fink v. Time Warner Cable*, 714 F.3d 739, 741 (2d Cir. 2013) (citing, *Oswego*, 85 N.Y.2d at 26). Additionally, there is "territorial" element to claims under Sections 349 and 350. The New York Court of Appeals has interpreted the limiting phrase "in this state" in sections 349 and 350 to require that "the transaction in which the consumer is deceived must occur in New York." *Goshen v. Mut. Life Ins. Co. of New York*, 98 N.Y.2d 314, 324 (2002).

---

[2] This Court has diversity jurisdiction under 28 U.S.C. § 1332(d)(2) because "complete diversity is required only between the named plaintiffs and the named defendants in a federal class action," *In re Agent Orange Prod. Liab. Litig. MDL No. 381*, 818 F.2d 145, 162 (2d Cir. 1987), and Plaintiff McVetty is a citizen of New York while TomTom is incorporated in California and has its primary place of business in New Hampshire, and the amount in controversy exceeds $5,000,000 (Compl. ¶¶ 38-39, 43-44, 49.)

[3] Plaintiff's reliance on the more lenient reasonableness standard articulated in *Guggenheimer v. Ginzburg*, 43 N.Y.2d 268, 273 (1977)—which pronounced that "[in]n weighing a statement's capacity, tendency or effect in deceiving or misleading customers, we do not look to the average customer but to the vast multitude which the statutes were enacted to safeguard—including the ignorant, the unthinking and the credulous who, in making purchases, do not stop to analyze but are governed by appearances and general impressions"—is misplaced in light of the New York Court of Appeals' retreat from that approach, even if it has not explicitly overruled *Guggenheimer. Hollander v. Metro. Transp. Auth.*, 2015 N.Y. Slip Op. 50991(U), *4 n.2 (N.Y. Sup. Ct. 2015).

Plaintiff has not stated a plausible claim under Sections 349 and 350 because he fails to allege (1) that any deception or transaction occurred in New York, (2) injury, or (3) that a reasonable consumer would be deceived by the use of the word "Lifetime" on Product packaging.

First, Plaintiff's Complaint ignores and fails to address the territorial requirement where it merely alleges that McVetty is a citizen of New York and fails to make any allegations about where he was exposed to allegedly deceptive materials or purchased TomTom Products. *See, e.g. Egan v. Telomerase Activation Scis., Inc.*, 8 N.Y.S.3d 175, 176 (1st Dep't 2015) (denying class certification where "plaintiffs failed to show that any other putative class members made the relevant transactions in New York"); *Ovitz v. Bloomberg L.P.*, 909 N.Y.S.2d 710, 712 (1st Dep't 2010) (holding out of state resident failed to state a claim where he did not allege he was deceived in New York), *aff'd on other grounds*, 18 N.Y.3d 753 (2012).

Plaintiff's contentions that he has a right to sue under Sections 349 and 350 because he is a citizen of New York and TomTom has a Consumer Agreement with a provision choosing New York law are unavailing. The fact that McVetty is a citizen of New York is insufficient because the "General Business Law analysis does not turn on the residency of the parties." *Goshen*, 98 N.Y.2d at 325. As to choice of law, the purported consumer agreement with the New York choice of law provision is not mentioned in the Complaint but, even if it were, territorial connection is established through the facts of the alleged transaction or deception and not the parties' preferences. *See, e.g.*, *Wright v. Publishers Clearing House, Inc.*, 372 F. Supp. 3d 61, 66 (E.D.N.Y. 2019) ("Stretching Section 349 to apply to all cases where the parties agree on New York as their law of choice would depart from [the] instruction to focus on the strength of New York's connection to the transaction at issue.")

6

Second, McVetty is mistaken that the allegation that he and others paid a premium for TomTom Products is sufficient to allege injury. McVetty alleges that he and other class members "purchased Products based upon the representations on the packaging" and that those Products "remain functional."[4] (Compl. ¶¶ 47-48.) As an initial matter, Plaintiff has failed to allege which Product he or any other class member purchased, how much was paid, or what a comparable alternative would have cost, and accordingly has not adequately alleged that he or any class member paid a premium. Relatedly, he has not adequately alleged that the Products do not remain functional such that he faces additional charges for services that he thought were included at the time of purchase. The portion of the January 2018 Announcement excerpted in the Complaint explicitly states that service changes apply only to older devices and products with Lifetime Maps will not be impacted. (Compl. ¶ 14.) Accordingly, even if McVetty had sufficiently alleged that he paid a premium, his admission that the Products he and other class members purchased contain Lifetime Maps and continue to function renders his claim facially deficient. *See, e.g.*, *In re Sling Media Slingbox Advert. Litig.*, 202 F. Supp. 3d 352, 361 (S.D.N.Y. 2016) (holding that plaintiffs failed to plead injury where they did "not allege that they can no longer use their Slingbox units to watch television programming, or that they now face additional costs to view content. Instead, Plaintiffs merely allege that when they purchased their Slingbox Systems Plaintiffs did not have to view unrequested advertisements, and after March 17, 2015, they were subjected to unwanted advertisements").

---

[4] The parties dispute whether a reasonable consumer would expect "lifetime maps" to provide "half a map" (Opp'n Mem. at 9-10; Reply Mem. at 4); this question is immaterial where the Complaint alleges only that "Plaintiff's Products remain functional yet are denied traffic and map updates" (Compl ¶ 48) and the only mention of geographical coverage is in an excerpt of a warranty provision on TomTom's website—"The geographical coverage and feature support in the map will continue to match the original version, as long as the original is commercially available" (Compl. ¶ 15)—which McVetty alleges that neither he nor any class member relied upon because these terms were not available to consumers prior to sale.

Third, McVetty fails to plausibly allege that a reasonable consumer would be misled by the use of the word "Lifetime" on Product packaging. To this end, Plaintiff's chief allegations are that "[n]o reasonable consumers understand or interpret 'lifetime' to mean sooner than the actual lifetime of the device as measured by its ability to function with reasonable memory capacity, especially when the devices accept memory cards with the updates on them" (Compl. ¶ 30) and that the use of "lifetime" on packaging is "illusory given the undisclosed caveats that the 'lifetime' referred to as not merely the lifetime of the device, but the amount of time defendant chooses to support the device" (Compl. ¶ 28). Neither of these allegations is sufficient as a matter of law without further detail concerning the contents of the Product labels.[5]

"The primary evidence in a consumer-fraud case arising out of allegedly false advertising is, of course, the advertising itself. And in determining whether a reasonable consumer would have been misled by a particular advertisement, context is crucial." *Fink*, 714 F.3d at 742. While the Complaint includes various images of a single side of the packaging for three Product models (Compl. ¶ 7), it does not specify which Product model McVetty or any class member purchased or provide the "entire context" of any label. *In re Frito-Lay N. Am., Inc. All Nat. Litig.*, No. 12-MD-2413 RRM RLM, 2013 WL 4647512, at *16 (E.D.N.Y. Aug. 29, 2013) (noting that "in

---

[5] TomTom further avers that because McVetty was aware of and included in the Complaint excerpts of a warranty from TomTom's website that defines "lifetime" as "the useful life of the device, which means the period of time that TomTom continues to support your device with software updates, services, content or accessories. A device will have reached the end of its life when none of these are available any more" (Compl. ¶¶ 15, 19), Plaintiff cannot argue that a reasonable consumer would be deceived or mislead. McVetty has include this language in the Complaint but alleges that that "[a]t no point prior to the time of sale did defendant, acting through its privies, make the terms of the lifetime maps and traffic updates available to consumers" and therefore alleges that neither he nor any other class member was aware of or reviewed this definition of "Lifetime" prior to purchasing the Products (*Id.* ¶ 17). In fact, McVetty specifically alleges that he and the other class members purchased Products based on representations on the packaging, which did not contain any limiting language. (*Id.* ¶¶ 18, 47.) Accordingly, this matter is distinguishable from those in which courts have held that clarifying or limiting information on packaging can defeat a deception claim. *E.g. Reyes v. Crystal Farms Refrigerated Distribution Co.*, No. 18CV2250NGGRML, 2019 WL 3409883, at *3 (E.D.N.Y. July 26, 2019) (finding packaging not misleading when packaging disclosed inclusion of margarine even though packaging stated "made with real butter").

resolving the reasonable consumer inquiry, one must consider the entire context of the label" and collecting cases considering print of different sizes and on entire item).

Besides failing to identify the relevant Product model, Plaintiff also fails to allege any reason why a reasonable consumer would understand "lifetime" to be defined by the ability to install additional software—through an SD card, which McVetty does not allege his Product is compatible with—rather than because of the hardware or inherent memory. *See, e.g. Wynn v. Topco Assocs., LLC*, No. 19-CV-11104 (RA), 2021 WL 168541, at *3 (S.D.N.Y. Jan. 19, 2021) (holding that "Plaintiffs have failed to plausibly allege that a reasonable customer would in fact conclude that the word 'vanilla' on a product's front label implies that the product's flavoring was derived *exclusively* from natural vanilla extract, such that the front label would be misleading," even if the difference between natural and artificial flavoring is material to the consumer); *Pichardo v. Only What You Need, Inc.*, No. 20-CV-493 (VEC), 2020 WL 6323775, at *3 (S.D.N.Y. Oct. 27, 2020) (holding that plaintiff failed to allege that label was misleading where the label "does not state that it is 'made with vanilla extract' or even contain the words 'vanilla extract.' There is no basis, therefore, to conclude that a reasonable consumer would be misled by the label to believe that all (or even most) of the vanilla taste comes from vanilla extract"). This case is thus distinguishable from those in which courts have found that a consumer might be misled by certain representations on labeling as to the origin of a product, *see, e.g.*, *Hesse v. Godiva Chocolatier, Inc.*, 463 F. Supp. 3d 453, 467 (S.D.N.Y. 2020) (holding that plaintiffs adequately plead that "a reasonable consumer could view the phrase Belgium 1926 as representing that Godiva's chocolates are manufactured in Belgium" based on presence of "Belgium 1926" on the packaging because a consumer could plausibly infer "that the phrase represents *both* the provenance of the company—Belgium, in 1926—and a representation that its chocolates continue to be

manufactured there"), or a food label of "healthy" or "natural," *see, e.g. In re Frito-Lay N. Am., Inc. All Nat. Litig.*, No. 12-MD-2413 RRM RLM, 2013 WL 4647512, at *16 (E.D.N.Y. Aug. 29, 2013) (holding that court could not determine as a matter of law whether reasonable consumer would be mislead by "natural" label on products that contained genetically modified ingredients); *Ackerman v. Coca-Cola Co.*, No. CV-09-0395 (JG), 2010 WL 2925955, at *15 (E.D.N.Y. July 21, 2010) ("I cannot conclude as a matter of law that a reasonable consumer could not be misled into believing that vitaminwater is a product that may help maintain healthy dietary practices and fail to appreciate that the product is not solely composed of vitamins and water"). By contrast, the instant case is premised upon a far less plausible and unsubstantiated source of consumer confusion.

Accordingly, Plaintiff has failed to state a plausible claim under Sections 349 and 350.

## II.    Fraud

"Generally, in a claim for fraudulent misrepresentation, a plaintiff must allege [(1)] a misrepresentation or a material omission of fact which was false and known to be false by defendant, [(2)] made for the purpose of inducing the other party to rely upon it, [(3)] justifiable reliance of the other party on the misrepresentation or material omission, and [(4)] injury." *Mandarin Trading Ltd. v. Wildenstein*, 16 N.Y.3d 173, 178 (2011). In other words, to state a claim for fraud, a plaintiff must "allege facts that give rise to a strong inference of fraudulent intent." *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994). Fraud claims must be pled with specificity. Fed. R. Civ. P. 9(b).

McVetty's fraud claim does not satisfy the heightened pleading requirement because he does not specify which Product he or any other class member purchased, when or where such Producs were purchased, and when and where Plaintiff or any class member saw the allegedly

deceptive packaging.[6] *See Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993) (noting that to comply with the heightened pleading requirement, "the complaint must: (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent."). McVetty's fraud claim further fails because even if he relied upon the word "Lifetime" on Product packaging, he has failed to allege that TomTom knew that its use of the term "Lifetime" was false or misleading. *See, e.g.*, *Hesse*, 463 F. Supp. 3d at 472-73 (dismissing fraud claim for lack of particularized allegations of scienter where complaint contained only "conclusory allegations that Godiva 'knew or recklessly disregarded the fact that Godiva Chocolates are not made in Belgium,' and that it 'intend[ed] that Plaintiffs and other consumers rely on these representations and omissions, as evidenced by [Godiva's] intentionally using labeling that either directly states or clearly implies that the chocolates are from Belgium'"). Accordingly, the Court must dismiss McVetty's fraud claim.

## III.    Negligent Misrepresentation

"A claim for negligent misrepresentation requires the plaintiff to demonstrate (1) the existence of a special or privity-like relationship imposing a duty on the defendant to impart correct information to the plaintiff; (2) that the information was incorrect; and (3) reasonable reliance on the information." *J.A.O. Acquisition Corp. v. Stavitsky*, 8 N.Y.3d 144, 148 (2007). "[T]he alleged misrepresentation must be factual in nature[.]" *Hydro Invs., Inc. v. Trafalgar Power Inc.*, 227 F.3d 8, 20-21 (2d Cir. 2000).

---

[6] This failure is particularly problematic in light of his claim that he and others relied on representations on the packaging because, according to the Complaint, TomTom sells its products directly online or through third-party retailers and, if McVetty purchased his Product online, it is even less clear whether he could have relied on anything printed on the packaging.

Plaintiff has not stated a plausible claim for negligent misrepresentation where he fails to allege that TomTom owed him a duty to impart accurate information because of a special relationship. Plaintiff alleges, at most, an arms-length business transaction between himself and TomTom, which does not impose a duty on TomTom to provide correct information. *See Kimmell v. Schaefer*, 89 N.Y.2d 257, 263 (1996) ("[L]iability for negligent misrepresentation has been imposed only on those persons who possess unique or specialized expertise, or who are in a special position of confidence and trust with the injured party such that reliance on the negligent misrepresentation is justified."); *High Tides, LLC v. DeMichele*, 931 N.Y.S.2d 377, 383 (2d Dep't 2011) ("A special relationship does not arise out of an ordinary arm's length business transaction between two parties."); *see also Segedie v. Hain Celestial Grp., Inc.*, No. 14-CV-5029 NSR, 2015 WL 2168374, at *14 (S.D.N.Y. May 7, 2015) ("Defendant's obligation to label products truthfully does not arise from any special relationship.")

Plaintiff concedes that he has not alleged a special relationship but avers that even "[w]here a plaintiff fails to allege the existence of a special relationship, negligent misrepresentation is still properly pled where the plaintiff 'emphatically' alleges (1) the person making the representation held or appeared to hold unique or special expertise and (2) the speaker was aware of the use to which the information would be put and supplied it for that purpose." Opp'n Mem. at 11-12 (quoting *Greene v. Gerber Prod. Co.*, 262 F. Supp. 3d 38, 75 (E.D.N.Y. 2017)). McVetty's argument fails because the case upon which he relies is readily distinguishable. The *Greene* court held that consumer plaintiffs stated a claim for negligent misrepresentation even though they did not allege a "special relationship" with the defendant because the plaintiffs had "emphatically" alleged that the defendant "had unique expertise regarding the lack of scientific support for its representations" where defendants health claims had been explicitly rejected by regulators and

12

defendant "intended that Plaintiffs and other consumers would rely on those representations in making purchasing decisions." 262 F. Supp. 3d at 76. Unlike in *Green*, McVetty does not allege that TomTom had special expertise or unique information regarding the efficacy of its Products. Instead, McVetty alleges that TomTom deceived consumers because it used the term "Lifetime" on its packaging, which TomTom considered to have a very specific meaning that was not included on the packaging or otherwise accessible to consumers. Even if McVetty is "emphatic" in his assertions, he has not alleged that TomTom owed him a duty to impart accurate information arising from TomTom's unique knowledge. Accordingly, the Court must dismiss the negligent misrepresentation claim.

## IV.  Breach of Express Warranty

An express warranty is an "affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain." N.Y.U.C.C. § 2-313(1)(a). To state a claim for breach of express warranty under New York law, a plaintiff must allege (1) a material statement amounting to a warranty; (2) the buyer's reliance on this warranty as a basis for the contract with his immediate seller, (3) the breach of this warranty, and (4) injury to the buyer caused by the breach. *See Oden*, 330 F. Supp. 3d at 895 (E.D.N.Y. 2018) (dismissing express warranty claim where plaintiffs alleged reliance on promotional statements but "the Complaint is devoid of any facts that would permit the inference that Plaintiff actually read these statements and directly relied upon them when making the decision to utilize Defendant's product"). Additionally, New York law requires that a plaintiff in an express warranty action give notice to the seller with specificity. N.Y. U.C.C. § 2-607(3)(a).

Plaintiff has failed to state a plausible breach of express warranty claim for at least four reasons. First, as previously explained, McVetty has not alleged that he or any class members suffered any injury. Second, the Complaint fails to specify who sold him or any of the class

members their Products and instead alleges that TomTom "manufactures, distributes, markets, labels and sells [Products] from third-party retailers, including brick-and-mortar stores and online, and directly from defendant's website." (Compl. ¶ 1.) In other words, McVetty has not specified whether he purchased his Product online from TomTom directly or through a third-party retailer. "[F]ailure to plead the name of the seller . . . render[s] defective the plaintiff's cause[] of action alleging breach of express warranty." *Gale v. Int'l Bus. Machines Corp.*, 781 N.Y.S.2d 45, 47 (2d Dep't 2004). Third, in light of Plaintiff's failure to identify the seller, McVetty has also necessarily failed to allege that he provided the seller with notice. *See Hubbard v. Gen. Motors Corp.*, No. 95 CIV. 4362, 1996 WL 274018, at *5 (S.D.N.Y. May 22, 1996) (dismissing express warranty claim where complaint "lack[ed] any allegation that plaintiff notified GM, or the dealer from which he purchased the vehicle, of the claimed defect"). Finally, McVetty fails to allege any express warranty. McVetty's allegation that "Defendant warranted to plaintiff and class members that the Products would receive updates" (Compl. ¶ 96) is inconsistent with his other allegations that packaging used but did not define the term "Lifetime." Even if the use of the term "Lifetime" constitutes an express warranty, McVetty has not alleged a breach where he has alleged that he and other class members purchased Products with Lifetime Maps, which, by the terms of the January 2018 Announcement McVetty included in the complaint, were not impacted by any January 2018 action. In fact, McVetty has not even alleged that he or any class members purchased Products prior to January 2018 such that TomTom's announcement occurred after the Products at issue here were purchased.

Accordingly, McVetty has failed to state a claim for breach of express warranty.

## V.    Unjust Enrichment

"[I]n order to sustain an unjust enrichment claim, "[a] plaintiff must show that (1) the other party was enriched, (2) at [the plaintiff's] expense, and (3) that it is against equity and good

conscience to permit [the other party] to retain what is sought to be recovered.'" *E.J. Brooks Co. v. Cambridge Sec. Seals*, 31 N.Y.3d 441, 455 (2018) (quoting *Mandarin Trading Ltd. v. Wildenstein*, 16 N.Y.3d 173, 182 (2011) (alterations in original).

McVetty's unjust enrichment claim fails for at least two reasons. First, McVetty's failure to specify who sold him or any of the class members their Products means that he has not alleged who was enriched. *Gale*, 781 N.Y.S.2d at 47 ("failure to plead the name of the seller . . . rendered defective the plaintiff's cause[] of action alleging . . . unjust enrichment"). Second McVetty has failed to allege that any gains would be unjust where McVetty has not plausibly alleged that a reasonable customer would be misled or deceived by TomTom's use of the term "lifetime," *Axon v. Florida's Nat. Growers, Inc.*, 813 F. App'x 701, 706 (2d Cir. 2020) ("[T]he unjust enrichment claim here fails [because] she has not alleged a fraud that would render Florida's Natural's enrichment 'unjust.'"), or that TomTom discontinued services that it represented would continue where, based on McVetty's allegations, the January 2018 Announcement—which McVetty does not allege post-dates his or any class member's Product purchase—did not apply to Products with Lifetime Maps such as McVetty's and McVetty's Product continues to function. Accordingly, the Court must dismiss the unjust enrichment claim.

## CONCLUSION

For the foregoing reasons, the Court GRANTS TomTom's motion to dismiss and dismisses all of McVetty's claims without prejudice. Plaintiff shall have 30 days from date of this order to file an amended complaint. Failure to timely amend will result in the claims being deemed dismissed with prejudice. The Clerk of the Court is respectfully directed to terminate the motion at ECF No. 15.

Dated: March 13, 2021
      White Plains, New York

SO ORDERED:

HON. NELSON S. ROMAN
UNITED STATES DISTRICT JUDGE