UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

FRANCIS MCVETTY, *individually and on behalf of all others similarly situated*,

                                        Plaintiff,

        -against-

TOMTOM NORTH AMERICA, INC.,

                                        Defendant.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: __07/15/2022__

No. 19 Civ. 4908 (NSR)
OPINION & ORDER

NELSON S. ROMÁN, United States District Judge:

This putative class action alleges that Defendant TomTom North America, Inc. misled consumers to believe it was promising them that one of its navigation devices (the "Product") would have "Lifetime Maps" to avoid having to replace their device every few years. (Am. Compl. at 1–12, ECF No. 24.) Plaintiff Francis McVetty, individually and on behalf of others similarly situated, brings this action against Defendant asserting claims for violations of New York's General Business Law §§ 349 and 350, breach of express warranty, breach of implied warranty of merchantability, unjust enrichment, and trespass to chattel. (*Id.* at 14–16.) Presently pending before the Court is Defendant's motion to dismiss Plaintiff's Amended Complaint under Federal Rule of Civil Procedure 12(b)(6). (ECF No. 31.) For the following reasons, the Court GRANTS Defendant's motion to dismiss.

## BACKGROUND

### I. Factual Background

The following facts are derived from the Amended Complaint and are taken as true and constructed in the light most favorable to Plaintiff for the purposes of this motion.

Defendant, a California corporation with a principal place of business in New Hampshire, manufactures, distributes, markets, labels, and sells portable navigation devices to consumers

through third-party retailers, including brick-and-mortar stores and online, and directly from its website (the "Products"). (Am. Compl. ¶¶ 1, 59). "All of the Products are marketed and advertised as coming with Lifetime Maps or Lifetime Maps and Traffic, point-of-sale marketing, retailers' catalogues, websites and television sales, uniformly and pervasively promotes the Lifetime Maps and/or Traffic Updates." (*Id.* ¶ 5.) "The product boxes have continuously highlighted the addition of Lifetime Traffic and/or Maps . . . ." (*Id.* ¶ 6.) Because of rapidly changing technology, consumers are willing to pay a premium for a device that comes with updates so that they are not continually needing to buy new devices. (*Id.* ¶¶ 7–8.) Accordingly, Defendant "capitalizes on this consumer sentiment by essentially saying, 'Buy our higher-priced devices now and you won't have to get another one for a long time because we will maintain the level of functionality and added services.'" (*Id.* ¶ 9.)

The warranty terms for Lifetime Maps on Defendant's website provide the following: "When you purchase a navigation device or smartphone app which includes Lifetime Maps, you can download 4 or more full updates of your map every year for the lifetime of your product. Lifetime Maps are available without additional charge and for as long as the product is supported." (*Id.* ¶ 11.) Plaintiff alleges that these terms were not available to customers prior to the time of sale. (*Id.* ¶ 47.) Plaintiff further alleges that in the warranty terms, Defendant "self-serving[ly]" defined "lifetime" as "the useful life of the device" or "the period of time that [Defendant] continues to support [a] device with software updates, services, content or accessories." (*Id.* ¶ 39.)

In January 2018, Defendant announced that, due to technological limitations, certain devices—not including those with the Lifetime Maps service—will not be able to renew maps or services or receive software updates and, though the device will continue to function, the map will become out-of-date such that navigation will be less accurate, and, under a heading of

"Replacement Offer" consumers may consider purchasing a replacement device using a "rebate" (the "January 2018 Announcement"). (*Id.* ¶¶ 10, 45.)

Consequently, Plaintiff alleges that Defendant changed its services from providing "Lifetime Maps" to offering "individual map zones," for which users must switch from one map zone to another by first downloading a new file onto their navigational device. (*Id.* ¶¶ 13–14.) When users download a new map zone onto their navigational device, the map zone replaces the users' current map on your navigational device. (*Id.* ¶ 15.)  Plaintiff claims that such changes make it impossible "to have a fully functioning map service that covers anywhere the user might drive as advertised by [D]efendant through the term 'lifetime maps' since downloading a new map zone deletes the user's current map zone." (*Id.* ¶ 16.)

Plaintiff further alleges that an affected device's capacity to continue to receive updates is "entirely dependent upon the prior updates distributed by [D]efendant to consumers," and that "[b]y diminishing and/or eliminating the utility of affected devices, [D]efendant has been able to reverse and/or stem its decline in direct-to-consumer sales." (*Id.* ¶¶ 42–43.) He also alleges that "[D]efendant's reliance on its sole discretion as to when it decides to cease providing updates disregards that consumers were buying hardware (the physical devices) and software (lifetime maps), such that its revocation of part of the transaction constitutes a taking under false pretenses and unconscionable commercial conduct." (*Id.* ¶ 44.)

Plaintiff, a citizen of Westchester County, New York (*id.* ¶ 54), alleges that he purchased one of Defendant's Products in 2012 (the "Device") because he "desired to purchase a navigation device with lifetime maps to avoid having to place his device every few years." (*Id.* ¶¶ 3, 73.) He alleges that he paid a premium for the Device because he "relied on [D]efendant's promise of 'Lifetime Maps' when he chose the [Device] over other models." (*Id.* ¶ 74). He alleges that the

proposed classes for this putative class action include all consumers in New York who purchased any of Defendant's navigation devices sold before 2013 "which were advertised as being sold with Lifetime Maps, but were rendered less valuable, following [D]efendant's decision to terminate Lifetime Maps for users of those devices." (*Id.* ¶ 61.)

## II. Procedural Background

On May 25, 2019, Plaintiff filed the original operative class action complaint (Compl., ECF No. 1.) On October 18, 2019, Defendant filed a letter seeking leave to file its first motion to dismiss, which the Court subsequently granted and for which it set a briefing schedule. (ECF Nos. 6 & 13.) After the parties filed their briefing on May 19, 2020, the Court granted Defendant's first motion to dismiss Plaintiff's Complaint for failure to state a claim on March 13, 2021. (ECF No. 23.) The Court further granted Plaintiff thirty days to file an amended complaint. (*Id.* at 15.)

On April 12, 2021, Plaintiff filed his Amended Complaint, asserting claims for (1) violation of New York General Business Law §§ 349 and 350; (2) breach of express warranty; (3) breach of implied warranty of merchantability; (4) unjust enrichment; and (5) trespass to chattel. (Am. Compl., ECF No. 24.) As relief, Plaintiff seeks both monetary damages and injunctive relief that would require Defendant to correct the Product's alleged misrepresentation. (*Id.*)

On June 25, 2021, Defendant again sought leave to file a motion to dismiss, which the Court subsequently granted and for which it issued a briefing schedule. (ECF Nos. 27 & 29.) On September 16, 2021, the parties filed their respective briefing on the instant motion: Defendant its notice of motion (ECF No. 30), memorandum in support ("Motion," ECF No. 31), reply ("Reply," ECF No. 32); and Plaintiff his response in opposition ("Response in Opposition," ECF No. 33).

## LEGAL STANDARD

In deciding a motion to dismiss under Rule 12(b)(6), the Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's

favor. *Freidus v. Barclays Bank PLC,* 734 F.3d 132, 137 (2d Cir. 2013). To survive a motion to dismiss, a complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Mere "labels and conclusions" or "formulaic recitation[s] of the elements of a cause of action will not do"; rather, the complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly,* 550 U.S. at 555. In applying these principles, the Court may consider facts alleged in the complaint and documents attached to it or incorporated by reference. *Chambers v. Time Warner, Inc.,* 282 F.3d 147, 152–53 (2d Cir. 2002) (internal quotation marks and citation omitted).

## DISCUSSION

Plaintiff asserts claims against Defendant for (1) violations of New York General Business Law ("GBL") §§ 349 and 350, (2) breach of express warranty, (3) breach of implied warranty of merchantability, (4) unjust enrichment, and (5) trespass to chattel. (*See* Am. Compl. at 14–16.) Defendant seeks to dismiss all claims for failure to state a claim. (*See* Mot. at 10–20.)

As a preliminary matter, the Court notes that while Defendant argued in its briefing that Plaintiff fails to sufficiently allege each of his asserted six causes of action, Plaintiff only addressed the arguments concerning his claims under GBL §§ 349 and 350 and for trespass to chattel. (*Compare* Mot. at 10–20, *with* Resp. in Opp'n at 7–11.) As such, the Court construes Plaintiff's failure to address such arguments as him abandoning his claims for breach of express warranty, breach of implied warranty of merchantability, and unjust enrichment, and therefore, the Court dismisses such claims. *See Felix v. City of New York*, 344 F. Supp. 3d 644, 654 (S.D.N.Y. 2018). Accordingly, the Court only addresses the parties' arguments related to Plaintiff's claims under GBL §§ 349 and 350 and for trespass to chattel.

I.      **New York General Business Law Sections 349 and 350**

Defendant argues that Plaintiff fails to assert a plausible claim under GBL §§ 349 and 350 for three reasons. First, Defendant argues that Plaintiff fails to remedy the specific and critical defect that the Court indicated in its previous decision dismissing his original Complaint—namely, that Plaintiff still fails to provide the "entire context" of the Product's label—that is, the entirety of the Product's packaging, or at the very least, the entirety of the packaging of any of its Products. (*See* Mot. at 10–11.) Second, Defendant argues that Plaintiff's Amended Complaint, like his original Complaint, still fails to sufficiently allege that any reasonable consumer would be deceived by a claim of "Lifetime Maps" because Plaintiff's allegations make clear that his Device continues to have map updates available. (*Id.* at 11–13.) And third, Defendant argues that Plaintiff fails to sufficiently plead a cognizable injury under GBL §§ 349 and 350 because he still has access to "Lifetime Maps" in his Device. (*Id.* at 13.) After due consideration, the Court agrees.

GBL § 349 involves unlawful deceptive acts and practices, while § 350 involves unlawful false advertising. "The standard for recovery under [§] 350, while specific to false advertising, is otherwise identical to [§] 349." *Denenberg v. Rosen*, 897 N.Y.S.2d 391, 396 (1st Dep't 2010) (quoting *Goshen v. Mutual Life Ins. Co. of N.Y.*, 98 N.Y.2d 314, 324 n.1 (2002)). The elements of a cause of action under both §§ 349 and 350 are that: "(1) the challenged transaction was 'consumer-oriented'; (2) defendant engaged in deceptive or materially misleading acts or practices; and (3) plaintiff was injured by reason of defendant's deceptive or misleading conduct." *Id.* (citing *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank*, 85 N.Y.2d 20, 25 (1995)). The parties' main dispute in the instant motion involves the second and third elements.

To be actionable, the alleged deceptive act must be "likely to mislead a reasonable consumer acting reasonably under the circumstances." *Oswego*, 85 N.Y.2d at 26;

6

*see also Orlander v. Staples, Inc.*, 802 F.3d 289, 300 (2d Cir. 2015). In determining whether a reasonable consumer would be misled, "[c]ourts view each allegedly misleading statement in light of its context on the product label or advertisement as a whole." *Pichardo v. Only What You Need, Inc.*, 20-cv-493 (VEC), 2020 WL 6323775, at *2 (S.D.N.Y. Oct. 27, 2020) (citing *Wurtzburger v. Kentucky Fried Chicken*, 16-cv-08186, 2017 WL 6416296, at *3 (S.D.N.Y. Dec. 13, 2017)); *see also Fink v. Time Warner Cable*, 714 F.3d 739, 742 (2d Cir. 2013) ("In determining whether a reasonable consumer would have been misled by a particular advertisement, context is crucial."). "It is well settled that a court may determine as a matter of law that an allegedly deceptive advertisement would not have misled a reasonable consumer." *Fink*, 714 F.3d at 741 (citing *Freeman v. Time, Inc.*, 68 F.3d 285, 289 (9th Cir. 1995); *Oswego*, 85 N.Y.2d at 26).

In its previous opinion dismissing Plaintiff's original Complaint, the Court concluded that Plaintiff had failed to state a claim under GBL §§ 349 and 350 because he failed to allege (1) that any deception or transaction occurred in New York; (2) a cognizable injury; and (3) that a reasonable consumer would be deceived by the use of the word "Lifetime" on the Product's packaging. (*See* ECF No. 23 at 6.) While a review of the Amended Complaint shows that Plaintiff remedied the first deficiency the Court found in its previous opinion (*see, e.g.*, Am. Compl. ¶¶ 3, 54–55), Plaintiff still fails to sufficiently allege a cognizable injury and that a reasonable consumer would be deceived by the use of the word "Lifetime" on the Product's packaging.

With respect to whether a reasonable consumer would be deceived, the Court agrees with Defendant that Plaintiff's allegations still fail to indicate how that a reasonable consumer would be misled by the use of the word "Lifetime." First, like the original Complaint, the Amended Complaint fails to provide the "entire context" of the Product's label on which Plaintiff relied when purchasing his Device. "The primary evidence in a consumer-fraud case arising out of

allegedly false advertising is, of course, the advertising itself. And in determining whether a reasonable consumer would have been misled by a particular advertisement, context is crucial." *Fink*, 714 F.3d at 742. While the Amended Complaint includes various images of a single side of the packaging for two of Defendant's Products (*see* Am. Compl. ¶¶ 5–6), it still fails to provide the "entire context" of the label of the Product on which Plaintiff relied on to purchase his Device. *In re Frito-Lay N. Am., Inc. All Nat. Litig.*, No. 12-MD-2413 RRM RLM, 2013 WL 4647512, at *16 (E.D.N.Y. Aug. 29, 2013) (noting that "in resolving the reasonable consumer inquiry, one must consider the entire context of the label" and collecting cases considering print of different sizes and on entire item). As such, Plaintiff's allegations that the use of the word "Lifetime" in the Product's label is misleading, (*see, e.g.*, Am. Compl. ¶¶ 10, 46), are conclusory because Plaintiff fails to provide the "entire context" necessary to determine whether a reasonable consumer would be misled by such statement.

And second, considering that Plaintiff alleges that the use of the word "Lifetime" in the label for Defendant's Products is misleading because "[D]efendant terminated lifetime map updates in January 2018," (*id.* ¶ 10), the Amended Complaint—even when construing it in Plaintiff's favor—points to nothing that could discredit Defendant's use of the word "Lifetime," particularly since Plaintiff himself alleges that his Device continues to have map updates available. (Mot. at 11.)

To begin, the very communication from Defendant on which Plaintiff relies to allege that Defendant misled him and others expressly indicates, with bold and capital letters, that "**DEVICES WITH LIFETIME MAPS ARE NOT AFFECTED.**" (Am. Compl. ¶ 10 (emphasis in original).) To be sure, Plaintiff later alleges that the Product model of the Device he purchased is among those Products affected. (*See id.* ¶ 12.) But because Plaintiff alleges to have bought his

8

Device with the "Lifetime Maps" service, then according to the January 2018 announcement to which he refers in the Amended Complaint, Plaintiff's Device is not among those Products affected. (*See id.* ¶ 18 ("When [P]laintiff purchased the [Device] in 2012, . . . he bought the physical navigation device and lifetime maps service."); *see also Kardovich v. Pfizer, Inc.*, 97 F. Supp. 3d 131, 141 (E.D.N.Y. 2015) ("[W]here a conclusory allegation in the complaint is contradicted by a document attached to the complaint, the document controls and the allegation is not accepted as true." (citing *Amidax Trading Grp. v. S.W.I.F.T. SCRL,* 671 F.3d 140, 146–47 (2d Cir. 2011), *cert. denied*, 568 U.S. 1229 (2013)).

It logically follows then, that for Plaintiff to sufficiently allege that his own Device—which he bought with the "Lifetime Maps" service—does not continue to have map updates available, he must allege, for example, that he attempted to download map updates on his Device and failed to do so. Only then could Plaintiff plausibly allege that "[D]efendant terminated lifetime map updates in January 2018," (Am. Compl. ¶ 10), for his Device such that the use of the word "Lifetime" is misleading as he alleges. *See, e.g.*, *In re Sling Media Slingbox Advert. Litig.*, 202 F. Supp. 3d. at 360–61 & n.15 (dismissing GBL § 349 claim when "plaintiffs failed to allege actual injury because they did not sufficiently allege any actual performance issues with the product: they did not, for example, 'allege that they can no longer use their Slingbox units to watch television programming, or that they now face additional costs to view content.'"). Yet, nowhere in the Amended Complaint does Plaintiff allege anything of the sort. Therefore, even when taking his allegations as true, Plaintiff "points to nothing . . . that could discredit" Defendant's statements about its Products. *Tomasino v. Estee Lauder Companies Inc.*, 44 F. Supp. 3d 251, 258 (E.D.N.Y. 2014).

If anything, through his own allegations, Plaintiff instead admits that his Device continues to have map updates available—which directly contradicts his own allegations that Defendant

misled him by using the word "Lifetime" in its Products after it terminated the lifetime map updates in January 2018. (*See, e.g.*, Am. Compl. ¶ 14 ("To switch from one map zone to another, a user must download a new file onto their navigational device."); *id.* ¶ 15 ("When a user downloads a new amp zone onto their navigational device[,] "the map zone will be downloaded and replace your current one on your navigational device."); *see also id.* ¶ 4 (depicting the display of Plaintiff's Device when turned on and showing that the Device's software is dated "12/11/2018," which indicates that Plaintiff was able to update his software *after* receiving the January 2018 communication).) And on that same basis, the Court is also of the view that the Amended Complaint also fails to plausibly allege that Plaintiff suffered an injury.

Accordingly, the Court dismisses Plaintiff's claims under GBL §§ 349 and 350.

## II. Trespass to Chattel

Defendant next argues that Plaintiff fails to sufficiently state a claim for trespass to chattel electronically through the Internet because the Amended Complaint is devoid of any allegation that the alleged software updates were downloaded to his Device without his consent and authorization. (Mot. at 16–17.) Defendant argues that, at best, Plaintiff's allegations amounts to harmless intermeddling that does not give rise to a cognizable injury. (*Id.* at 17–18.) After due consideration, the Court agrees.

To state a claim for trespass to chattels under New York law, plaintiffs must establish that defendants "intentionally, and without justification or consent, physically interfered with the use and enjoyment of personal property in [plaintiffs'] possession," and that plaintiffs were thereby harmed. *In re Jetblue Airways Corp. Priv. Litig.*, 379 F. Supp. 2d 299, 327–28 (E.D.N.Y. 2005) (quoting *Sch. of Visual Arts v. Kuprewicz*, 771 N.Y.S.2d 804, 807 (N.Y. Sup. Ct. 2003)); *see also Register.com, Inc. v. Verio, Inc.,* 356 F.3d 393, 404 (2d Cir. 2004) ("A trespass to a chattel may be committed by intentionally . . . using or intermeddling with a chattel in the possession of

another, where the chattel is impaired as to its condition, quality, or value.") (quoting Restatement (Second) of Torts §§ 217(b), 218(b) (1965)) (internal quotation marks omitted); *City of Amsterdam v. Daniel Goldreyer, Ltd.*, 882 F. Supp. 1273, 1281 (E.D.N.Y. 1995) ("A trespass to chattel occurs when a party intentionally damages or interferes with the use of property belonging to another.").

Here, Plaintiff alleges that Defendant intermeddled with his Device by delivering software packages containing its "lifetime maps" that consumed "several times more space" on his Device than necessary. (Am. Compl. ¶ 84.) Ultimately, Plaintiff alleges that "[b]y transmitting these updates" to his Device, Defendant impaired the Device's condition, quality, and value, as Plaintiff "could no longer use it in the same manner that he could prior to [D]efendant's decision to terminate Lifetime Maps in January 2018." (*Id.* ¶ 87.)

However, as Defendant points out, Plaintiff himself alleges in the Amended Complaint that for him to have the "Lifetime Maps" service, he had to opt into an active subscription to receive any map updates on his Device. (*See id.* ¶ 10; *see also id.* ¶ 21 (screenshot displaying that a user "will continue to receive updates until [the user] decide[s] to end [his or her] subscription.").) Hence, even when construing the Amended Complaint in his favor, Plaintiff fails to sufficiently allege that Defendant "intentionally, and without justification or consent, . . . interfered with" his Device because Plaintiff, through his active subscription, consented to receive the same map updates of which he complains. *In re Jetblue Airways Corp. Priv. Litig.*, 379 F. Supp. 2d at 327–28 (quoting *Kuprewicz*, 771 N.Y.S.2d at 807)).

Further, the Court agrees with Defendant that Plaintiff fails to sufficiently allege a cognizable injury resulting from the alleged trespass. Specifically, Plaintiff fails to allege when Defendant allegedly transmitted the "inefficient software packages" to his Device, as well as how exactly the alleged inefficiencies of these software packages impaired the Device's condition,

quality, and value. It is not as if, for example, Plaintiff alleged that at a specific point in time, his Device either began operating slower or with software glitches, or otherwise became difficult to operate. Instead, Plaintiff merely alleges, in a conclusory fashion, that he could no longer use the Device "in the same manner that he could prior to [D]efendant's decision to terminate Lifetime Maps in January 2018," (Am. Compl. ¶ 87), and that the software packages "included a significant amount of 'bloat'" that was unnecessary to the Device's critical functions, (*id.* ¶ 85). Simply put, Plaintiff merely alleges that Defendant's software packages occupied more "space" on his Device than necessary—which, at best, only alleges a "[h]armless intermeddling with a chattel [that] is not actionable." *Hecht v. Components Intern., Inc.*, 867 N.Y.S.2d 889, 899 (N.Y. Sup. Ct. 2008) (citing Restatement § 218, Comment e [Comment on clauses (b) and (c)]).

Therefore, the Court concludes that Plaintiff fails to plausibly state a claim for trespass to chattel claim, and dismisses such claim accordingly.

III.   **Leave to Amend**

Leave to amend a complaint should be freely given "when justice so requires." Fed. R. Civ. P. 15(a)(2). "[I]t is within the sound discretion of the district court to grant or deny leave to amend." *Kim v. Kimm*, 884 F.3d 98, 105 (2d Cir. 2018) (internal quotation marks omitted). "Leave to amend, though liberally granted, may properly be denied" for "'repeated failure to cure deficiencies by amendments previously allowed'" or "'futility of amendment,'" among other reasons. *Ruotolo v. City of N.Y.*, 514 F.3d 184, 191 (2d Cir. 2008) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

Plaintiff has already amended once, after having the benefit of a previous decision by this Court on the sufficiency of his claims and a pre-motion letter from Defendant stating the grounds on which it would move to dismiss his Amended Complaint. (ECF Nos. 23 & 27.) Generally, a plaintiff's failure to fix deficiencies in the previous pleading, after being provided notice of them,

is alone sufficient ground to deny leave to amend. *See Nat'l Credit Union Admin. Bd. v. U.S. Bank Nat'l Ass'n*, 898 F.3d 243, 257–58 (2d Cir. 2018) ("When a plaintiff was aware of the deficiencies in his complaint when he first amended, he clearly has no right to a second amendment even if the proposed second amended complaint in fact cures the defects of the first. Simply put, a busy district court need not allow itself to be imposed upon by the presentation of theories *seriatim.*") (alteration, footnote, and internal quotation marks omitted); *In re Eaton Vance Mut. Funds Fee Litig.*, 380 F. Supp. 2d 222, 242 (S.D.N.Y. 2005) (denying leave to amend because "the plaintiffs have had two opportunities to cure the defects in their complaints, including a procedure through which the plaintiffs were provided notice of defects in the Consolidated Amended Complaint by the defendants and given a chance to amend their Consolidated Amended Complaint," and "plaintiffs have not submitted a proposed amended complaint that would cure these pleading defects"), *aff'd sub nom. Bellikoff v. Eaton Vance Corp.*, 481 F.3d 110, 118 (2d Cir. 2007) (*per curiam*) ("[P]laintiffs were not entitled to an advisory opinion from the Court informing them of the deficiencies in the complaint and then an opportunity to cure those deficiencies.") (internal quotation marks omitted).

Further, while Plaintiff requested leave to file a Second Amended Complaint within the last sentence of his response in opposition, he has not otherwise suggested that he is in possession of facts that would cure the deficiencies that Defendant highlighted in the instant motion and that the Court highlighted either in its previous opinion or the instant one. *See TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 505 (2d Cir. 2014) (plaintiff need not be given leave to amend if plaintiff fails to specify how amendment would cure the pleading deficiencies in the complaint); *Gallop v. Cheney*, 642 F.3d 364, 369 (2d Cir. 2011) (district court did not err in dismissing claim with prejudice in absence of any indication plaintiff could or would provide

additional allegations leading to different result); *Horoshko v. Citibank, N.A.*, 373 F.3d 248, 249-50 (2d Cir. 2004) (*per curiam*) (district court did not abuse its discretion by not granting leave to amend where there was no indication as to what might have been added to make the complaint viable and plaintiffs did not request leave to amend).

Therefore, the Court dismisses Plaintiff's Amended Complaint with prejudice.

## CONCLUSION

For the foregoing reasons, the Court GRANTS Defendant's motion to dismiss (ECF No. 30), and DISMISSES Plaintiff's Amended Complaint with prejudice. The Clerk of Court is directed to terminate the motion at ECF No. 30 and this action, to enter judgment accordingly, and to close the case.

Dated:  July 15, 2022
        White Plains, NY

SO ORDERED:

NELSON S. ROMÁN
United States District Judge

14